UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-23068-Civ-GRAHAM
       (04-20614-Cr-GRAHAM)
MAGISTRATE JUDGE P. A. WHITE

JAVONNE WILKS,                    :

        Movant,                   :

v.                                :         REPORT OF
                                          MAGISTRATE JUDGE
UNITED STATES OF AMERICA,         :

        Respondent.               :
_____

### Introduction

This matter is before the Court on the movant's motion to vacate, attacking his convictions and sentences for possession with intent to distribute 35 grams or more of crack cocaine and felon in possession of a firearm entered following a jury verdict in case no. 04-20614-Cr-Graham.

The court has reviewed the motion with supporting memorandum, the government's response, the movant's reply, the Presentence Investigation Report (PSI), and all pertinent portions of the underlying criminal file.

### Claims Raised

The movant raises the following claims:

> 1.  He was denied effective assistance of counsel, where his lawyer failed to argue in support of his motion to suppress that the evidence seized from his vehicle was obtained in violation of his constitutional rights. (Cv-DE#1; Cv-DE#2:6).

2.    He was denied effective assistance of counsel on appeal, where his lawyer failed to challenge the court's denial of the movant's motion to suppress. (Cv-DE#1; Cv-DE#2:10).

3.    He was denied effective assistance of counsel, where his trial counsel erroneously stipulating that the firearm involved in the offense traveled in interstate commerce. (Cv-DE#1; Cv-DE#2:12).

4.    He was denied effective assistance of counsel, where his lawyer misadvised him regarding the effects of testifying on his own behalf, thereby making the movant's waiver not knowing and voluntary. (Cv-DE#1; Cv-DE#2:15).

## Procedural History

The movant's convictions arise from the February 18, 2004 traffic stop resulting from the movant traveling as a high rate of speed and weaving in and out of traffic.

On August 20, 2004, the movant was charged by Indictment with possession with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. §841(a)(1) and §841(b)(1)(B) (Count 1); possession of a firearm and ammunition in furtherance of a drug trafficking offense, in violation of 18 U.S.C. §924(c)(1)(A)(i) (Count 2), and felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §924(g)(1) (Count 3). (Cr-DE#1).

Prior to trial, the movant filed a motion to suppress

statements (Cr-DE#16) obtained in violation of his <u>Miranda</u>[1] rights, as well as, a motion to suppress the stop and search of the movant's vehicle (Cr-DE#17) on the basis that the officer violated the movant's constitutional rights, and therefore, evidence obtained during the search should be suppressed. Following evidentiary hearings, a Report was entered recommending that the motions be denied. (Cr-DE#47). On January 21, 2005, the district court adopted the Report, denying the suppression motions for the reasons set forth in the Magistrate's Report. (Cr-DE#57)(.

The movant eventually proceeded to trial, where he was found guilty as to Count 1, but the jury was unable to reach a unanimous verdict as to the remaining offenses, Counts 2 and 3, and therefore, a mistrial was declared as to those charges. (Cr-DE#111:217-19). Retrial as to Counts 2 and 3 commenced on March 4, 2005. (Cr-DE#71). Thereafter, the movant was acquitted as to Count 2, but found guilty as to Count 3, following a jury verdict. (Cr-DE#84).

A PSI was prepared prior to sentencing. The probation officer determined that the movant qualified as a career offender pursuant to U.S.S.G. §4B1.1(a), because he was at least 18 years old at the time of the offenses of conviction, the offenses involved a controlled substance, and he had at least two prior felony convictions for a crime of violence. (PSI ¶17). Moreover, the probation officer further determined the movant also qualified as an armed career offender, pursuant to U.S.S.G. §4B1.4(a), because the movant was subject to an enhanced penalty under the provisions of 18 U.S.C. §924(e), based on his prior convictions. (<u>Id</u>.). This resulted in a total adjusted offense level 34. (PSI ¶17).

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

3

The probation officer further determined that the movant had a total of 12 criminal history points, resulting in a criminal history category VI. (PSI ¶¶26-28). However, the criminal history points were of no import pursuant to U.S.S.G. §4B1.1, because a career offender's criminal history category is always category VI. (PSI ¶28). The probation officer determined that, based on a total offense level 34 and a criminal history category VI, the movant's advisory guideline range was 262 to 327 months in prison. (PSI ¶65). The movant filed several objections to the PSI prior to sentencing. (Cr-DE#s91,93,94).

On July 20, 2005, the movant appeared for sentencing. (Cr-DE#99). At that time, the district court concluded that the movant qualified for an enhanced sentence both as a career offender and as an armed career offender. (Cr-DE#108:31-32). The court sentenced the movant below the applicable advisory guideline range on the finding that the enhanced sentence was in due in part to the movant's prior convictions committed when he was only 14 years old. (Cr-DE#108:50). Thereafter, the court sentenced the movant to two concurrent terms of 212 months in prison, followed by five years of supervised release. (Cr-DE#99).

The movant appealed, raising the following claims:[2]

> 1. The court erred in concluding that the prior convictions qualified as predicate offenses for purposes of determining the movant's status as a career offender.

---

[2] The claims are gleaned from the movant's brief on appeal, which can be found on Westlaw, a legal research database, at <u>United States v. Wilks</u>, 2006 WL 3293963 (11th Cir. 2006), and from the appellate court's published opinion, <u>United States v. Wilks</u>, 464 F.3d 1240 (11th Cir. 2006); (Cr-DE#116).

2.    The court erred in concluding that the prior convictions qualified as predicate offenses for purposes of determining an enhanced sentence pursuant to 18 U.S.C. §924(e).

3.    He is entitled to vacatur of his sentences.


On September 13, 2006, the Eleventh Circuit affirmed the movant's judgments in a published opinion. United States v. Wilks, 464 F.3d 1240 (11th Cir. 2006); (Cr-DE#116). Certiorari review was denied on November 27, 2006. Wilks v. United States, ___ U.S. ___, 127 S.Ct. 693 (2006). This motion to vacate was timely filed less than one year later on November 17, 2007.[3] (Cv-DE#1).


<u>Discussion of the Claims</u>

In this collateral proceeding, the movant raises multiple claims which challenge counsel's effectiveness. In order for the movant to prevail on a claim of ineffective assistance of counsel, he must establish that 1) his counsel's representation fell below an objective standard of reasonableness; and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995).

---

[3]See: Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

5

Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11 Cir. 1994).

Bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. See United States v. Robinson, 64 F.3d 403, 405 (8 Cir. 1995), Ferguson v. United States, 699 F.2d 1071 (11 Cir. 1983), United States v. Ammirato, 670 F.2d 552 (5 Cir. 1982); United States v. Sanderson, 595 F.2d 1021 (5 Cir. 1979).

In **claim one**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to argue in support of his motion to suppress that the evidence seized from his vehicle was obtained in violation of his constitutional rights. (Cv-DE#1; Cv-DE#2:6). According to the movant, counsel should have investigated and argued that the police officers exceeded the parameters governing an inventory search, when they searched the interior of the movant's vehicle under the guise of an inventory search. (Id.).

The Fourth Amendment guarantees that individuals will be

6

secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. U.S. Const. Amend. IV. However, it is well settled law that law enforcement officers may stop an individual if they have a reasonable suspicion based on objective facts that the person has engaged, or is about to engage, in criminal activity. <u>Terry v. Ohio</u>, 392 U.S. 1, 22-24 (1968). If a vehicle is operated in any fashion to give a police officer probable cause to believe that a traffic rule, regulation, or statute has been violated, a stop of the vehicle is *per se* justified, even if the officer does have ulterior motives. <u>United States v. Whren</u>, 517 U.S. 806 (1996); <u>United States v. Williams</u>, 876 F.2d 1521, 1524 (11 Cir. 1989); <u>United States v. Simmons</u>, 172 F.3d 775, 778 (11th Cir. 1999). Where the initial traffic stop is legal, the officer has "the duty to investigate suspicious circumstances that then [come] to his attention." <u>United States v. Harris</u>, 928 F.2d 1113, 1117 (11th Cir. 1991). Additionally, police are "entitled under the decisional law to conduct a variety of checks on the driver and his car, including questioning the driver about the traffic violation, requesting consent to search the car, and running a computer check for outstanding warrants." <u>Simmons</u>, 172 F.3d at 778.

"The Fourth Amendment generally requires police to secure a warrant before conducting a search." <u>See</u> <u>Maryland v. Dyson</u>, 527 U.S. 465, 466, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442 (1999). However, searches of vehicles are, in certain circumstances, an established exception to the warrant requirement. <u>Id.</u> at 466. Under the "automobile exception," if (1) a car is "readily mobile and (2) probable cause exists to believe it contains contraband, the Fourth Amendment ... permits the police to search the vehicle without more." <u>Id.</u> at 467. Officers can search any container in an operational car without a warrant if they have probable cause to

believe that the container holds evidence of a crime. <u>United States v. Goddard</u>, 312 F.3d 1360, 1363 (11th Cir. 2002) (<u>quoting</u> <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983)); <u>California v. Acevedo</u>, 500 U.S. 565, 579-80 (1991); <u>United States v. Watts</u>, 329 F.3d 1282, 1286 (11th Cir. 2003). Another exception to the warrant requirement exists for inventory searches, conducted pursuant to an established procedure, on legally impounded vehicles. <u>South Dakota v. Opperman</u>, 428 U.S. 364, 372-73 (1976).

In the instant case, the officers conducted the search as an inventory search, the validity of which forms the crux of the movant's argument in this collateral proceeding. However, in recommending denial of the suppression motion, the Magistrate Judge found the search of the movant's vehicle and seizure of the firearm and drugs valid both (1) based on an inventory search and (2) pursuant to the automobile exception.

Even if the officers violated the parameters of an inventory search, the movant could still not prevail on this claim, as it is clear from the record that under the automobile exception to the warrant requirement, the search of the movant's vehicle was lawful. <u>See</u> <u>cf</u>., <u>United States v. Strickland</u>, 902 F.2d 937, 942 (11th Cir. 1990) (upholding validity of the search of a vehicle on a different basis than the ground asserted by the searching officers; "[t]he absence of Strickland's consent to [the search of a spare tire contained in his vehicle] does not necessitate the suppression of the evidence derived from the tire search, however, if there is another valid basis justifying the intrusion." ).

In this case, the Magistrate Judge found probable cause existed to search the car. (Cr-DE#47). Specifically, the facts adduced at the evidentiary hearing on the suppression motions

revealed that on the evening of February 18, 2004, Detective Jonathan Lang with the Miami-Dade Police Department, assigned to the Robbery Intervention Detail, was driving an unmarked vehicle on N.W. 17th Avenue near the vicinity of 62nd Street in Miami, Florida, when he noticed a Dodge Intrepid, with illegally dark tinted windows traveling at a high rate of speed and weaving in and out of traffic. (Cr-DE#41:10-58). Detective Lang, intent on making a traffic stop, gave chase and eventually initiated his lights, effecting a traffic stop at N.W. 40th Street and 17th Avenue. As Detective Lang approached the movant's vehicle, he observed the movant open the driver's side door, raise his hands in the air, and then attempt to conceal something in his right side. When Detective Lang approached the movant, the movant appeared nervous, his hands were shaking, and he kept looking from side to side. When asked if he was carrying a weapon, the movant responded in the negative, which was later confirmed by a patdown search.

The movant further denied having any weapons in his vehicle. When Defective Lang approached the vehicle, and looked inside with the aid of a flashlight, he observed the butt of a firearm protruding from the area between the driver's seat and the center console. The firearm was removed from the car, at which time it was determined that it was loaded with ten rounds of ammunition.

After being advised of and waiving his <u>Miranda</u> rights, the movant stated that he had found the firearm the previous day, but did not indicate the location where he found the gun. Through a records search, Detective Lang then determined that the movant had four prior felony convictions.

A short while later, other officers arrived at the scene. Miami-Dade Police Officer Monica Martinez testified that, pursuant

to Detective Lang's instructions, she conducted an inventory search of the movant's vehicle to ensure there were no other weapons or any contraband in the vehicle prior to having it towed. (Cr-DE#41:63-71). Officer Martinez was searching in the glove compartment for the vehicle registration and also for the presence of any additional firearms, when she discovered two large cookies of crack cocaine, consistent with distribution, not personal drug use. The movant referred to the crack cookies as his "religious bread," and indicated he didn't want his wife to learn about their seizure. Shortly thereafter, the movant's wife arrived at the scene, and rather than impound the vehicle, the car was returned to the wife.

The facts as narrated above more than adequately establish that the officer had probable cause to stop and search the vehicle, as the movant was driving at a high rate of speed and the vehicle had unlawful tinting on the windows. These facts, coupled with viewing the gun in the car, justified the arrest. Following the movant's arrest, the officers intended to impound the vehicle, and therefore, an inventory search of the vehicle was warranted and lawful, revealing the presence of crack cocaine. Such a search was incidental to the movant's arrest and therefore valid. See New York v. Belton, 453 U.S. 454, 460 (1981).

Under these circumstances, no showing has been made in this collateral proceeding that had counsel argued that the parameters of the inventory search were invalid, that the court would have granted suppression of the evidence. Thus, no deficient performance or prejudice has been established arising from counsel's failure to pursue this argument pretrial or on appeal. He is therefore entitled to no relief on this claim.

10

In **claim two**, the movant asserts that he was denied effective assistance of counsel on appeal, where his lawyer failed to challenge the court's denial of the movant's motions to suppress his post-arrest statements, as well as, the evidence seized from the movant's vehicle. (Cv-DE#1; Cv-DE#2:10). The law is clear that appellate counsel is not ineffective for failing to raise nonmeritorious claims on direct appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). As discussed *infra*, the arguments raised in support of this claim are devoid of merit, so that counsel was not ineffective for failing to challenge the validity of the suppression motions on appeal.

Regarding the evidence seized from the movant's vehicle, as discussed in relation to claim one above, the arguments raised herein are devoid of merit and should be denied for the same reasons previously explained in relation to claim one above.

Regarding the validity of his post-arrest statements, that claim likewise fails on the merits. As will be recalled, Detective Lang advised the movant of his constitutional rights by using a Miranda advice of rights card. According to Detective Lang, the movant knew his rights and voluntarily waived them. In response thereto, the movant indicated that he had found the gun the previous day, and ultimately admitted that the drugs founds in the vehicle were crack cocaine, but that he didn't want his wife to know about them. The movant testified on his own behalf at the suppression hearings. (Cr-DE#46:32-57). He explained that the tints on his car were in compliance with the law at the time he had them installed. The movant likewise denied having made any post-arrest statements pertaining to his knowledge of the crack cocaine concealed in his car, and indicated that he refused to execute a waiver of rights form.

11

As discussed previously in this Report, the evidence at the suppression hearing demonstrates that the movant was advised of his Miranda rights. The record further reveals that the movant understood those rights, and that he impliedly waived those rights by his subsequent conduct during the interview. See, e.g., United States v. Cardwell, 433 F.3d 378, 389-90 (4th Cir. 2005) ("Because [the defendant] had been fully informed and indicated his understanding of his Miranda rights, his willingness to answer [the officer]'s question is as clear an indicia of his implied waiver of his right to remain silent as we can imagine." (citation omitted)). Even if admissions were made after indicating that he would not sign the rights waiver form, this does not suggest that his inculpatory admission was somehow coerced or that it was involuntary. The Eleventh Circuit has made clear that the refusal to sign a rights waiver form, without more, does not establish the absence of an effective waiver under Miranda. See United States v. Dowd, 451 F.3d 1244, 1250-51 (11th Cir. 2006). Indeed, the Eleventh Circuit has held that a defendant may voluntarily make statements (thereby impliedly waiving his Miranda rights), even in the wake of his refusing to sign a written waiver of rights. See Id. (concluding that where a defendant "continued talking immediately after declining to sign the waiver" and "did not suggest even equivocally that he wished to cease questioning," the defendant impliedly waived his Miranda rights, notwithstanding his failure to sign the waiver form). Here, the movant refused to sign the waiver form, but it appears he continued speaking with the officers and made a voluntary statement to them concerning the existence of the crack cocaine inside his vehicle. As in Dowd, the fact that the movant declined to sign the written rights waiver form is not dispositive, where the totality of the circumstances suggests an implied waiver of his rights.

12

Nor is the movant's statement involuntary because there was some trickery involved in eliciting it. The Eleventh Circuit has stated that "[i]t is clear [ ] that the police's use of a trick alone will not render a confession involuntary." United States v. Castaneda-Castaneda, 729 F.2d 1360, 1362-63 (11th Cir. 1984) (citations omitted); See Id. (holding that defendant's waiver was voluntary, where agents told him that his wife had already confessed when she had not). No objective evidence has been provided in this collateral proceeding to suggest that the officers used trickery or coercion to obtain the movant's statements. This is especially so where the totality of the evidence otherwise establishes that the statement was voluntarily made, free from any coercion. See Id. Because, taken as a whole, the totality of the circumstances supports the inference that the movant voluntarily waived his Miranda rights, the district court did not err in denying his motion to suppress post-arrest statements.

Thus, even if counsel had pursued the issue, there is nothing of record to suggest that the outcome of the suppression proceedings would have been different. In fact, the Magistrate credited the officers' testimony when it recommended denial of the motions. Thus, on the record before this court, there has been no showing of prejudice stemming from counsel's failure to pursue this issue either pretrial or on appeal. The movant is therefore entitled to no relief on this basis. See Strickland v. Washington, supra.

In **claim three**, the movant asserts that he was denied effective assistance of counsel, where his trial counsel erroneously stipulated that the firearm involved in the offense traveled in interstate commerce. (Cv-DE#1; Cv-DE#2:12). According to the movant, the firearm seized from his vehicle was manufactured

13

in Florida and therefore did not travel in interstate commerce.

In order to convict a defendant under 18 U.S.C. §922(g)(1), the government must prove beyond a reasonable doubt, among other things, "that the firearm was in or affecting interstate commerce." United States v. Deleveaux, 205 F.3d 1292, 1297 (11th Cir. 2000). At trial, the evidence established that Detective Lang retrieved from the movant's vehicle a Taurus Millennium .40 caliber handgun in a holder. (Cr-DE#105:71-72,78,112). By stipulation, it was established that the firearm and its ammunition were manufactured outside the State of Florida and had moved in interstate or foreign commerce prior to the time the movant possessed it. (Cr-DE#106:192-93).

The Sixth Amendment of the Constitution guarantees to a criminal defendant the opportunity for a jury to decide guilt or innocence. See Duncan v. Louisiana, 391 U.S. 145, 149 (1968). "A necessary corollary is the right to have one's guilt determined only upon proof beyond the jury's reasonable doubt of every fact necessary to constitute the crime charged." United States v. Mentz, 840 F.2d 315, 319 (6th Cir. 1988).

In this collateral proceeding, however, the movant has failed to establish that the seized firearm was manufactured in Florida. In fact, Taurus guns are often manufactured in Brazil and imported into the United States. See cf., United States v. Easterling, 41 Fed.Appx. 201 (10th Cir. 2002)(gun was manufactured by Taurus in Brazil and imported into Miami, Florida); United States v. Smith, 997 F.2d 881 n.1 (5th Cir. 1993)(Taurus firearm in question was made in Brazil and transported to Dallas, Texas); United States v. Doe, 960 F.2d 221, 223 (1st Cir. 1992)(upholding admissibility of gun shop owner's statement at trial that he "knows" Taurus pistols are

14

manufactured in Brazil to establish interstate nexus). Moreover, the stipulation, read into evidence by the government, appears to have been signed by all the parties. (Cr-DE#106:193). The movant was present when the government read the stipulation into evidence and indicated all parties had signed the agreement. (Id.). At no time did the movant indicate to the court that he had not consented, nor did he voice any objection. (Id.). The movant was thus clearly aware of the stipulation, and consented to it.

Under these circumstances, where the movant provides no objective evidence that the firearm was manufactured in Florida and never traveled in interstate commerce, no showing has been made that counsel's strategic decision to enter into the stipulation was ineffective. Further, even if the movant's silence could not be construed as acceptance, it is apparent that the decision to enter into the stipulation was a sound strategic choice and also one which was not patently unreasonable. Such a strategy was clearly reasonable under the circumstances of this case.[4]

Finally, even if by entering into the stipulation, counsel's performance could somehow be deemed deficient, the movant was not

---

[4]Scrutiny of an attorney's performance is highly deferential, therefore, reviewing courts will not second-guess strategic decisions; rather, the attorney's performance is evaluated in light of all the circumstances as they existed at the time of the conduct, and is presumed to have been adequate. Strickland, 466 U.S. at 689-90. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Id. at 690-91. Even if in retrospect the strategy to pursue one line of defense over another appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it. Adams v. Wainwright, 709 F.2d 1443, 1145 (11 Cir. 1983). Accordingly, tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. United States v. Costa, 691 F.2d 1358 (11 Cir. 1982); Coco v. United States, 569 F.2d 367 (5 Cir. 1978); See also cf., United States v. Chavez-Marquez, 66 F.3d 259, 263 (10th Cir. 1995)(counsel's decision to stipulate to a prior conviction requires highly deferential review); Hakeem v. Beyer, 990 F.2d 750, 763 (3rd Cir. 1993)(decision to stipulate to the testimony of an absent witness "involved trial strategy and is entitled to deference").

prejudiced by the stipulation. The movant provides no information or other objective evidence in this case to establish that the particular firearm seized from his vehicle was manufactured in Florida. According, the movant received constitutionally effective assistance of counsel with regard to this issue. See Strickland v. Washington, 466 U.S. 668 (1984).[5]

In **claim four**, the movant asserts that he was denied effective assistance of counsel, where his lawyer misadvised him regarding the effects of testifying on his own behalf, thereby making the movant's waiver of the right not knowing and voluntary. (Cv-DE#1; Cv-DE#2:15).

Of course, a criminal defendant has a fundamental constitutional right to testify in his or her own behalf at trial. Rock v. Arkansas, 483 U.S. 44, 49-52 (1987); United States v. Teague, 953 F.2d 1525, 1532 (11 Cir. 1992) (en banc). This right is personal to the defendant, and cannot be waived by the trial court or defense counsel. Teague, supra; Brown v. Artuz, 124 F.3d 73, 77-78 (2 Cir. 1997). The proper vehicle for an argument that a defendant's right to testify was violated by his trial counsel is a claim of ineffective assistance of counsel, which requires analysis under Strickland v. Washington, 466 U.S. 668 (1984). Gallego v. United States,174 F.3d 1196 (11 Cir. 1999)(citing Teague, 953 F.2d at 1534); Brown, 124 F.3d at 79-80; Sexton v. French, 163 F.3d 874, 882 (4 Cir.), cert. den'd, 120 S.Ct. 139

---

[5]Second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11 Cir. 1994). A claim of ineffective assistance is a mixed question of law and fact. Strickland, 466 U.S. at 698.

(1999).  <u>United States v. Tavares</u>, 100 F.3d 995, 998 (D.C. Cir.1996).

In <u>Teague</u>, <u>supra</u>, the Eleventh Circuit held that an attorney who refused to accept the defendant's decision to testify, or failed to inform him of his absolute right to testify "would have neglected the vital professional responsibility of ensuring that the defendant's right to testify is protected," and counsel's action would not have fallen "within the range of competence demanded of attorneys in criminal cases." 953 F.2d at 1534 (<u>quoting</u> <u>Strickland v. Washington</u>, <u>supra</u>). The <u>Teague</u> court, having the benefit of testimony from an evidentiary hearing on the defendant's motion for a new trial, found that counsel's performance had not been deficient, and therefore did not address the prejudice prong of the <u>Strickland</u> analysis. 953 F.2d at 1535.

Not all assertions of ineffective assistance of counsel with regard to the right to testify or not testify warrant an evidentiary hearing. <u>Underwood v. Clark</u>, 939 F.2d 473 at 476 (7 Cir. 1991)(barebones assertion by a defendant is insufficient to require a hearing on a claim that the right to testify was denied, greater particularity and some substantiation such as an affidavit from the lawyer who allegedly forbade his client to testify are necessary to give the claim sufficient credibility to warrant a further investment of judicial resources); <u>Siciliano v. Vose</u>, 834 F.2d 29 (1 Cir.1987)(defendant's conclusory allegation that his attorney refused to allow him to testify in his own behalf was insufficient to entitle him to hearing on issue of whether his right to testify was violated); <u>Passos-Paternina v. United States</u>, 12 F. Supp. 231, 239-40 (D. Puerto Rico 1998).

The Fourth Circuit has held that a hearing was not necessary

17

where the defendant suffered no prejudice under <u>Strickland</u>, <u>supra</u>, because "his testimony at trial only helped his case...." <u>Sexton v. French</u>, 163 F.3d 874, 883 (4 Cir. 1998), <u>cert. den'd</u>, 120 S.Ct. 139 (1999). As stated, the Eleventh Circuit has not determined whether a conclusory allegation is sufficient to warrant further inquiry, such as the grant of a hearing.[6] <u>See</u>, <u>e.g.</u> <u>Brown</u>, 124 F3.d at 80. However, it is clear that a defendant must prove prejudice in order to be entitled to relief on such a claim. <u>See</u> <u>Teague</u>, <u>supra</u>.

In order to satisfy the prejudice prong, the movant must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Strickland</u>, <u>supra</u>. at 394. In other words, the movant must prove "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687; <u>see</u> <u>also</u>, <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993), <u>citing</u>, <u>Kimmelman v. Morrison</u>, 477 U.S. 365 (1986)("The essence of an ineffective assistance of counsel claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."). In <u>Fretwell</u>, the Supreme Court also concluded that "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." <u>Fretwell</u>, <u>supra</u> at 369, <u>citing</u>, <u>United</u>

---

[6]In <u>Gallego v. United States</u>, 174 F.3d (11 Cir. 1999) the Court rejects a "per se credit counsel in case of counsel rule," with regard to credibility findings in evidentiary hearings, but does not address the issue of when a hearing is actually required.

States v. Cronic, 466 U.S. 648, 653 (1984).  The touchstone of an ineffective-assistance claim is the fairness of the adversary proceeding, and "in judging prejudice and the likelihood of a different outcome, '[a] defendant has no entitlement to the luck of a lawless decisionmaker.'" Fretwell, supra at 370, citing, Strickland, supra at 695.

The movant's allegations in his motion to vacate indicate that he was aware of his right to testify. (Cv-DE#2:15). The movant concedes in this collateral proceeding that he discussed the right to testify with counsel, but counsel advised the movant against testifying because of the movant's prior conviction for attempted armed robbery, and the detrimental effect such information would have on the movant's trial. (Cv-DE#2:15-16). The movant claims, however, that he needed to testify to "tell his side of the story to the jury." (Id.). Despite being present throughout the trial, the movant states that years later he first learned that the government could not cross-examine him as to the attempted armed robbery conviction, as the court only permitted cross-examination relating to the movant's prior convictions for grand theft of an automobile, assault, and strong armed robbery. (Cv-DE#2:16).

Even if the movant had testified and told his "side of the story," the movant has not demonstrated his innocence in this collateral proceeding. The evidence at both trials amply supports his convictions. Thus, in light of the evidence against him, it is not likely that the result of the trial would have been different had the movant testified as proffered.[7] To the contrary, his

---

[7]In his traverse, the movant proffers for the first time the substance of his trial testimony. (Cv-DE#14:8). According to the movant, he would have testified that the crack cocaine belonged to an unidentified relative. (Id.). However, even if he had testified in this regard, the government could have impeached the movant with his post-arrest statements in which he acknowledged ownership of the drugs contained in the vehicle.

19

proffered testimony could have had a detrimental impact, calling into question his credibility before the jury. Consequently, the movant is not entitled to relief on this claim.

Moreover, the movant's claim that counsel failed and/or refused to allow him to testify on his own behalf is self-serving and not supported by any affidavit from counsel.[8] Counsel could have well believed that the movant's version of the events was not credible, subject to impeachment given the movant's post-arrest statements, or too suspect to put the movant on the stand, which would have subjected the movant to detrimental cross-examination regarding his multiple prior convictions. It is well settled under federal law that tactical or strategic choices cannot support a collateral claim of ineffective assistance. McNeal v. Wainwright, 722 F.2d 674 (11 Cir., 1984); United States v. Costa, 691 F.2d 1358 (11 Cir. 1982); see e.g., United States v. Swanson, 943 F.2d 1070, 1075-76 (9 Cir. 1991)("In some cases a trial attorney may find it advantageous to his clients' interests to concede certain elements of an offense or his guilt of one of certain charges."); United States v. Simone, 931 F.2d 1186 (7 Cir. 1991)(admission that defendant was drug dealer in combination with vigorous defense of more serious charge recognized as "logical" and not ineffective

---

[8]See, e.g., White v. United States, 99 Ci. 11809, 2000 WL 546426 at *5 (S.D.N.Y. 2000)(Where petitioner asserted that held his counsel that he wanted to testify, but counsel rested the defenses case without calling petitioner, court found that petitioner's affidavit "fail[ed] to substantiate his allegation that trial counsel's performance was deficient." "'[T]he defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand.'", quoting, United States v. Castillo, 14 F.3d 802, 805 (2nd Cir.), cert. den'd, 513 U.S. 829 (1994); see also, e.g., Jeffries v. United States, 234 F.3d 1268 (6th Cir. 2000)(table)(Petitioner "has not shown that counsel's performance was deficient as he merely made conclusory, self-serving allegations that his attorney refused to let him take the stand."); Torres v. Stinson, 2000 WL 1919916 at *5 (E.D. N.Y. 2000)("A barebones assertion by a defendant that his counsel failed to inform him of his rights is insufficient to establish an ineffective assistance of counsel claim under Strickland.").

assistance where inculpating evidence was undisputed). Under these circumstances, no deficient performance or prejudice has been establishing arising from counsel's misadvice or refusal to allow the movant to testify on his own behalf.

Finally, the movant's request for an evidentiary hearing on his claims of ineffective assistance of counsel should be denied. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this Report, the claims raised are unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

<u>Conclusion</u>

It is therefore recommended that the motion to vacate be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 6th day of June, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Javonne Wilks, <u>Pro Se</u>
     Reg. No.  63874-004
     F.C.C. - Coleman (Med.)
     P.O. Box 1032
     Coleman, FL 33521-1032

     Shaniek Maynard, AUSA
     U.S. Attorney's Office
     99 N.E. 4th Street
     Miami, FL 33132